United States District Court
Southern District of Texas
**ENTERED**
September 08, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANADARKO E&P ONSHORE LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CALIFORNIA UNION INSURANCE | § | |
| COMPANY and CENTURY INDEMNITY | § | CIVIL ACTION NO. H-21-1743 |
| COMPANY, solely as | § | |
| successor-in-interest to CIGNA | § | |
| Specialty Insurance Company | § | |
| f/k/a California Union | § | |
| Insurance Company, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Anadarko E&P Onshore LLC ("Plaintiff") filed this action in the 281st District Court of Harris County, Texas, on April 16, 2021, against defendants California Union Insurance Company ("Cal Union") and Century Indemnity Company ("Century") (collectively, "Defendants") for breach of contract and violation of the Texas Prompt Payment of Claims Act.[1] Defendants removed the action to this court on May 26, 2021.[2] Pending before the court are Plaintiff's Motion to Remand (Docket Entry No. 10) and

---

[1] Anadarko E&P Onshore LLC's Original Petition ("Original Petition"), Exhibit A to Defendants' Notice of Removal ("Notice of Removal"), Docket Entry No. 1-1, pp. 9-10 ¶¶ 37-46. All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[2] Notice of Removal, Docket Entry No. 1.

Defendants' Motion to Dismiss and Compel Arbitration ("Defendants' Motion to Compel") (Docket Entry No. 5).  For the reasons stated below, Plaintiff's Motion to Remand will be denied, and Defendants' Motion to Compel will be granted.

### I. Factual Allegations and Procedural Background

Plaintiff is a Delaware limited liability company with its principal place of business in Texas.[3]  Anadarko Consolidated Holdings, LLC (Plaintiff's sole member) is indirectly owned by Anadarko Petroleum Corporation (a Delaware corporation).[4]  Century is the successor to CIGNA Specialty Insurance Company (formerly known as California Union Insurance Company) and is a Pennsylvania corporation with its principal place of business in Philadelphia.[5]

Plaintiff purchased two third-party liability insurance policies (the "Policies") from Defendants.[6]  One of the Policies

---

[3] Original Petition, Exhibit A to Notice of Removal, Docket Entry No. 1-1, p. 3 ¶ 3.

[4] Defendants' Amended Notice of Removal ("Amended Notice of Removal"), Docket Entry No. 16, p. 3 ¶ 10; see also Plaintiff's Corporate Disclosure Statement and Certificate of Interested Parties, Docket Entry No. 12, p. 1 ¶ 1 ("Anadarko E&P Onshore LLC is a Delaware limited liability company whose shares are not publicly traded. [It] consists of a single member, Anadarko Consolidated Holdings LLC, who owns 100% of the interest in Anadarko E&P Onshore LLC.").

[5] Amended Notice of Removal, Docket Entry No. 16, p. 4 ¶ 11; see also Original Petition, Exhibit A to Notice of Removal, Docket Entry No. 1-1, p. 3 ¶¶ 3-5 (stating that Plaintiff is a Delaware company and that Defendants are incorporated in Pennsylvania).

[6] Original Petition, Exhibit A to Notice of Removal, Docket Entry No. 1-1, p. 2 ¶ 1.

covers the period from April 1, 1979 to April 1, 1980 (the "1979-80 Policy") and the other covers the period from April 1, 1980 to April 1, 1981 (the "1980-81 Policy").[7] The Policies provide that "[i]f limits of liability of the underlying insurance are exhausted[,]" Defendants have a duty to defend Plaintiff against suits alleging personal injury, property damage or advertising injury.[8]

Each of the Policies contains a "service of suit" clause, which provides that

> in the event of the failure of [Cal Union] to pay any amount claimed to be due hereunder, [Cal Union] hereon, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction . . . .

1979-80 Policy, Docket Entry No. 5-1, p. 5; 1980-81 Policy, Docket Entry No. 5-2, p. 4.

In 2007 Plaintiff and Defendants reached a settlement agreement.[9] The 2007 Settlement Agreement was intended to resolve "a dispute between CENTURY INDEMNITY and ANADARKO concerning insurance coverage . . . for paying or indemnifying ANADARKO for

---

[7]Id. at 4-5 ¶¶ 9-14.

[8]1979-80 Policy, Insuring Agreement, p. 6 ¶ (2)(a), Exhibit 1 to Defendants' Motion to Compel, Docket Entry No. 5-1; 1980-81 Policy, Insuring Agreement, p. 3 ¶ (2)(a), Exhibit 2 to Defendants' Motion to Compel, Docket Entry No. 5-2.

[9]Settlement Agreement Regarding Certain Defense Costs and Indemnity Costs (the "2007 Settlement Agreement"), Exhibit 1 to Defendants' Response in Opposition to Plaintiff's Motion to Remand ("Defendants' Response"), Docket Entry No. 23-1.

DEFENSE COSTS and INDEMNITY COSTS it has incurred or will incur in the future with respect to certain lawsuits against ANADARKO . . . ."[10] The suits concerned coverage claims under multiple insurance policies, including the Policies.[11]

The 2007 Settlement Agreement contains a merger clause:

> This AGREEMENT and the DEFENSE COSTS AGREEMENT contain the entire agreement between the parties as respects their subject matter. All discussions between the parties concerning the subject matter of this AGREEMENT and the DEFENSE COSTS AGREEMENT are merged into this AGREEMENT and the DEFENSE COSTS AGREEMENT. This AGREEMENT and the DEFENSE COSTS AGREEMENT may not be modified or amended, nor any of their provisions waived, except by an instrument in writing, signed by both parties hereunder.

2007 Settlement Agreement, Exhibit 1 to Defendants' Response, Docket Entry No. 23-1, p. 26 ¶ 20.

The 2007 Settlement Agreement also contains a dispute resolution provision:

### ARBITRATION

> 10. Any controversy or claim between CENTURY INDEMNITY and ANADARKO relating to the payment, non-payment, or reimbursement by either party of any PAST DEFENSE COSTS, INCURRED DEFENSE COSTS, FUTURE DEFENSE COSTS, PAST A/B/S INDEMNITY COSTS, or FUTURE A/B/S INDEMNITY COSTS, and any controversy or claim concerning this AGREEMENT, shall be settled by arbitration . . . .

Id. at 21 ¶ 10.

---

[10] Id. at 2.

[11] Id. at 3 and 2 (stating that the lawsuits concern "the POLICIES" and defining "the POLICIES" as "refer[ring] both to the policies listed on Exhibit A and to any other policies issued by CENTURY INDEMNITY to Union Pacific Resources Company and/or Champlin Petroleum Company.").

The term "Future Defense Costs" is defined as including costs for future "PRIVATE ACTION CLAIMS,"[12] which are defined as

> those pending or future lawsuits or portions of same, brought in the United States of America, seeking damages from ANADARKO for property damage, bodily injury, sickness, disease, or death resulting therefrom allegedly caused from exposure to environmental conditions stemming from ANADARKO'S facilities, operations, or products prior to January 1, 1986.

Id. at 7 ¶ D.

In 2013 and 2014 several lawsuits were brought against Plaintiff (the "Louisiana Parish Lawsuits") alleging that Plaintiff's oil and gas operations in Louisiana caused "substantial damage to land and waterbodies[,]"[13] i.e., property damage. Plaintiff asserts and Defendants do not dispute that the alleged damage occurred during periods covered by the Policies.[14]

---

[12] Id. at 11 ¶ K.

[13] Parish of Plaquemines v. Total Petrochemicals & Refining USA, Inc., et al., No. 2:18-cv-05256 (E.D. La.), Exhibit 4 to Defendants' Response, Docket Entry No. 23-4, p. 5; Parish of Jefferson v. Anadarko E&P Onshore LLC, et al., No. 2:18-cv-05213 (E.D. La.), Exhibit 5 to Defendants' Response, Docket Entry No. 23-5, p. 6; Parish of Plaquemines v. Hilcorp Energy Company, et al., No. 2:18-cv-05210 (E.D. La.), Exhibit 6 to Defendants' Response, Docket Entry No. 23-6, pp. 4-5; Parish of Plaquemines v. Equitable Petroleum Corporation, et al., No. 2:18-cv-05220 (E.D. La.), Exhibit 7 to Defendants' Response, Docket Entry No. 23-7, pp. 3-4; Charles W. Fasterling, et al. v. Hilcorp Energy Company, et al., No. 61-798 (25th Judicial District Court for the Parish of Plaquemines, Louisiana), Exhibit 8 to Defendants' Response, Docket Entry No. 23-8, p. 8.

[14] Original Petition, Exhibit A to Notice of Removal, Docket Entry No. 1-1, p. 7 ¶ 23.

In 2017 the parties entered into an addendum to the 2007 Settlement Agreement.[15] Under the 2017 Addendum Plaintiff agreed that upon receiving a settlement payment from Defendants, it would release Defendants from any liability under the Policies for Plaintiff's "PAST DEFENSE COSTS" in the Louisiana Parish Lawsuits.[16] However, Plaintiff explicitly "[did] not release or discharge [Defendants] from any claim, demand, cause of action, damage, or liability . . . under the Policies . . . relating to or arising out of any defense costs or indemnity costs relating to the LOUISIANA PARISH LAWSUITS not expressly included in the definition of PAST DEFENSE COSTS provided in [the] ADDENDUM . . . ."[17]

On April 16, 2021, Plaintiff filed this action against Defendants in the 281st District Court of Harris County, Texas, alleging that Defendants breached their contractual obligations under the Policies by refusing to pay defense costs arising out of the Louisiana Parish Lawsuits.[18] Plaintiff's Original Petition alleged that Defendants had paid some of the defense costs incurred by Plaintiff before September of 2016, but that Defendants had not

---

[15]Addendum to Settlement Agreement Regarding Certain Defense Costs and Indemnity Costs ("2017 Addendum"), Exhibit A to Plaintiff's Response to Defendants' Motion to Dismiss and Compel Arbitration ("Plaintiff's Response"), Docket Entry No. 21-1.

[16]Id. at 4 ¶ 2.

[17]Id. at 5 ¶ 3.

[18]Original Petition, Exhibit A to Notice of Removal, Docket Entry No. 1-1, p. 9 ¶ 39.

agreed to pay "any defense expenses incurred by Anadarko from September 2016 forward, including those at issue in this action."[19]

Defendants removed the action to this court on May 26, 2021, asserting diversity jurisdiction under 28 U.S.C. § 1332.[20] Defendants filed a Motion to Dismiss and Compel Arbitration on June 2, 2021;[21] Plaintiff filed a response on July 9, 2021;[22] and Defendants filed a reply on August 3, 2021.[23] Plaintiff filed Plaintiff's Motion to Remand on June 6, 2021;[24] Defendants filed a response on July 9, 2021;[25] and Plaintiff filed a reply on July 23, 2021.[26]

## II. Analysis

### A. Plaintiff Has Standing

Defendants argue that Plaintiff lacks standing to bring a breach of contract claim because Plaintiff "provides no factual allegations to show it entered into an enforceable contract with

---

[19] Id. at 8 ¶ 32.

[20] Notice of Removal, Docket Entry No. 1, p. 2 ¶ 5.

[21] Defendants' Motion to Compel, Docket Entry No. 5.

[22] Plaintiff's Response, Docket Entry No. 21.

[23] Defendants' Reply in Further Support of Their Motion to Dismiss and Compel Arbitration ("Defendants' Reply"), Docket Entry No. 42.

[24] Plaintiff's Motion to Remand, Docket Entry No. 10.

[25] Defendants' Response, Docket Entry No. 23.

[26] Plaintiff's Reply in Support of Plaintiff's Motion to Remand ("Plaintiff's Reply"), Docket Entry No. 38.

Century" and is not in privity of contract with Century.[27] Defendants argue that Plaintiff "alleges that Century [] 'has a duty to defend [Plaintiff] against suits alleging bodily injury and/or property damage' but continues on to state that this duty to defend is 'impose[d] . . . on California Union' by the Insurance Contracts."[28] Plaintiff responds that "[t]his argument ignores the allegations in [Plaintiff's] petition explaining that **both** California Union and Century Indemnity are being sued, with Century Indemnity being made a defendant solely based on its capacity as successor-in-interest to California Union . . . ."[29] Defendants do not revisit the standing argument in their Reply.[30]

The court is persuaded by Plaintiff's Response and concludes that Plaintiff has pleaded an actual concrete injury that would be redressed by a decision against Defendants. See Lujan v. Defenders of Wildlife, 112 S. Ct. 2130, 2136 (1992). Plaintiff has standing.

B.  **Diversity Jurisdiction Exists**

Defendants contend that the court may exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1332.[31] Section 1332(a)

---

[27]Defendants' Motion to Compel, Docket Entry No. 5, pp. 12-13.

[28]Id. at 12 (quoting Original Petition, Exhibit A to Notice of Removal, Docket Entry No. 1-1, p. 5 ¶¶ 15-16).

[29]Plaintiff's Response, Docket Entry No. 21, p. 23.

[30]See Defendants' Reply, Docket Entry No. 42.

[31]Notice of Removal, Docket Entry No. 1, p. 2 ¶ 5.

provides that federal district courts may exercise subject matter jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ."  A corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  The citizenship of an unincorporated entity is determined by the citizenship of all its members.  <u>Americold Realty Trust v. Conagra Foods, Inc.</u>, 136 S. Ct. 1012, 1015 (2016).  "Because federal courts have limited jurisdiction, parties must make clear, distinct, and precise affirmative jurisdictional allegations in their pleadings."  <u>MidCap Media Finance, L.L.C. v. Pathway Data, Inc.</u>, 929 F.3d 310, 313 (5th Cir. 2019) (internal quotations and citation omitted).

Plaintiff argues that Defendants failed to establish diversity jurisdiction because they "fail[ed] to allege either Defendant's state of incorporation or principal place of business" and "also fail[ed] to allege the citizenship of Anadarko E&P Onshore LLC's members."[32]  But Defendants subsequently filed an Amended Notice of Removal supplementing their original Notice of Removal with information that unambiguously establishes complete diversity

---

[32] Plaintiff's Motion to Remand, Docket Entry No. 10, p. 13.

between the parties.[33] The court therefore concludes that it has subject matter jurisdiction under 28 U.S.C. § 1332.

**C.   The 2007 Settlement Agreement Supersedes the Policies**

Plaintiff argues that Defendants waived their right to remove by agreeing to the service-of-suit provisions in the Policies.[34] Defendants argue that "Plaintiff's reliance on the service-of-suit clause . . . is misplaced because it is superseded by the dispute resolution clause in the 2007 Settlement Agreement."[35]

"For a contractual clause to prevent a party from exercising its right to removal, the clause must give a 'clear and unequivocal' waiver of that right." City of New Orleans v. Municipal Administrative Services, Inc., 376 F.3d 501, 504 (5th Cir. 2004) (quoting McDermott International, Inc. v. Lloyds Underwriters of London, 944 F.2d 1199, 1212 (5th Cir. 1991)). A contractual clause may do this by "mak[ing] clear that the other party to the contract has the 'right to choose the forum' in which any dispute will be heard." Waters v. Browning-Ferris Industries, Inc., 252 F.3d 796, 797 (5th Cir. 2001) (quoting City of Rose City v. Nutmeg Insurance Co., 931 F.2d 13, 16 (5th Cir.), cert. denied, 112 S. Ct. 301 (1991)).

---

[33] See Amended Notice of Removal, Docket Entry No. 16.

[34] Plaintiff's Motion to Remand, Docket Entry No. 10, p. 8.

[35] Defendants' Response, Docket Entry No. 23, p. 8.

The Policies' service-of-suit provisions state that

> in the event of the failure of [Cal Union] to pay any amount claimed to be due hereunder, [Cal Union] hereon, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

1979-80 Policy, Docket Entry No. 5-1, p. 5; 1980-81 Policy, Docket Entry No. 5-2, p. 4.

In Nutmeg the Fifth Circuit construed a nearly identical service-of-suit clause, which stated

> [W]e, at your request agree to submit to the jurisdiction of any Court of Competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

Nutmeg, 931 F.2d at 14.

The Fifth Circuit concluded that this provision was "unambiguous" and "plainly require[d] that the insurer submit to the jurisdiction of any court of the policyholder's choosing." Id. at 15. The Fifth Circuit therefore held that the service-of-suit clause waived the insurer's right of removal. Id.

In McDermott, 944 F.2d at 1200, the Fifth Circuit construed a service-of-suit provision that was substantially identical to the one in Nutmeg. But the Fifth Circuit found that the defendant in McDermott had not waived its removal rights. Id. at 1204-06. The Fifth Circuit distinguished the cases by noting that the policy at

issue in Nutmeg contained a service-of-suit provision as its only forum-selection clause, while the policy in McDermott had two forum-selection clauses -- a service-of-suit clause and an arbitration clause. McDermott, 944 F.2d at 1207. Here as in McDermott, there are more than one forum-selection clause: (1) the service-of-suit provisions in the Policies and (2) the arbitration clause in the 2007 Settlement Agreement, which -- as explained below -- supersedes the Policies. The court thus concludes that the service-of-suit provisions are not "clear and unequivocal" waivers of Defendants' right of removal. See New Orleans, 376 F.3d at 504.

When the terms of one contract are "so inconsistent with those of the other that the two cannot subsist together[,]" there is a presumption that the second superseded the first. IP Petroleum Co., Inc. v. Wevanco Energy, L.L.C., 116 S.W.3d 888, 899 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). A service-of-suit clause is inconsistent with an arbitration clause because both operate as forum-selection clauses. See McDermott, 944 F.2d at 1205 ("If the service-of-suit clause is a forum selection clause, the arbitration clause is a co-equal forum selection clause.").

While the Policies' service-of-suit provisions gave Plaintiff the right to select a forum "in the event of the failure of [Cal Union] to pay any amount claimed" under the Policies,[36] the 2007

---

[36] 1979-80 Policy, Exhibit 1 to Defendants' Motion to Compel, Docket Entry No. 5-1, p. 5; 1980-81 Policy, Exhibit 2 to Defendants' Motion to Compel, Docket Entry No. 5-2, p. 4.

Settlement Agreement provides that "[a]ny controversy or claim between [the parties] relating to the payment, non-payment, or reimbursement by either party" of future defense costs must be submitted to arbitration.[37] The Louisiana Parish Lawsuits are private action claims because they seek redress for damage to property. Therefore, they are Future Defense Costs within the meaning of the 2007 Settlement Agreement, and are subject to its arbitration clause. Because the service-of-suit provisions and the arbitration clause are inherently in conflict, the second supersedes the first. See IP Petroleum Co., 116 S.W.3d at 899.

Moreover, the 2007 Settlement Agreement supersedes the Policies because it contains a merger clause. A merger clause is "a contractual provision mandating that the written terms of the contract may not be varied by prior agreements because all such agreements have been merged into the new document." Allen Drilling Acquisition Company v. Crimson Exploration Inc., 558 S.W.3d 761, 772 (Tex. App.—Waco 2018, pet. filed) (op. on reh'g).

> Texas courts have long recognized that, under appropriate circumstances, "instruments pertaining to the same transaction may be read together to ascertain the parties' intent, even if the parties executed the instruments at different times and the instruments do not expressly refer to each other." Where appropriate, "a court may determine, as a matter of law," that multiple separate contracts, documents, and agreements "were part of a single, unified instrument."

---

[37]2007 Settlement Agreement, Exhibit 1 to Defendants' Response, Docket Entry No. 23-1, p. 21 ¶ 10.

Rieder v. Woods, 603 S.W.3d 86, 94 (Tex. 2020) (quoting Fort Worth Independent School District v. City of Fort Worth, 22 S.W.3d 831, 840 (Tex. 2000)).

The merger clause at issue provides that

> [the 2007 Settlement Agreement] and the DEFENSE COSTS AGREEMENT contain the entire agreement between the parties as respects their subject matter. All discussions between the parties concerning the subject matter of this AGREEMENT and the DEFENSE COSTS AGREEMENT are merged into this AGREEMENT and the DEFENSE COSTS AGREEMENT. This AGREEMENT and the DEFENSE COSTS AGREEMENT may not be modified or amended, nor any of their provisions waived, except by an instrument in writing, signed by both parties hereunder.

2007 Settlement Agreement, Exhibit 1 to Defendants' Response, Docket Entry No. 23-1, p. 26 ¶ 20.

Plaintiff argues that the 2007 Settlement Agreement's "subject matter" is confined to the specific dispute it settled.[38] But the arbitration clause makes clear that the 2007 Settlement Agreement's "subject matter" includes "[a]ny controversy or claim between [the parties] relating to the payment, non-payment, or reimbursement" of any past or future defense costs, as well as any controversy about the Agreement itself.[39] The present dispute is over non-payment of defense costs arising from private action claims against Plaintiff — precisely the kind of "future defense costs" encompassed by the 2007 Settlement Agreement's arbitration clause.

---

[38]Plaintiff's Reply, Docket Entry No. 38, p. 17.

[39]2007 Settlement Agreement, Exhibit 1 to Defendants' Response, Docket Entry No. 23-1, p. 21 ¶ 10.

**D.   The 2017 Addendum Does Not Supersede the Arbitration Clause**

Plaintiff argues that "[t]he 2017 Addendum separately identified the Louisiana Parish Lawsuits as a different and distinct class of claims not encompassed by the terms of the prior 2007 Settlement Agreement."[40]  The court is not persuaded by Plaintiff's argument.  Except as otherwise provided in its own language, the 2017 Addendum incorporated by reference all the defined terms from the 2007 Settlement Agreement.[41]  This would include the 2007 Settlement Agreement's definition of the term "future defense costs," which are the type of costs at issue here.  The 2017 Addendum provides that Plaintiff

> does not release or discharge CENTURY INDEMNITY from any claim, demand, cause of action, damage, or liability . . . under the POLICIES . . . relating to or arising out of any defense costs or indemnity costs relating to the LOUISIANA PARISH LAWSUITS not expressly included in the definition of PAST DEFENSE COSTS provided in this ADDENDUM . . . .

2017 Addendum, Exhibit A to Defendants' Response, Docket Entry No. 21-1, p. 4 ¶ 2.

The 2017 Addendum does not affect the application of the 2007 Settlement Agreement to the defense costs that Plaintiff incurred after September of 2016.  Those costs are still "future defense costs" as defined in the 2007 Settlement Agreement, and thus are subject to that agreement's arbitration clause.

---

[40]Plaintiff's Reply, Docket Entry No. 38, p. 8.

[41]2017 Addendum, Exhibit A to Defendants' Response, Docket Entry No. 21-1, p. 2.

The 2017 Addendum also provides that Plaintiff "expressly reserves, and does not waive, the right to demand payment or reimbursement from CENTURY INDEMNITY of all defense costs and indemnity costs for the LOUISIANA PARISH LAWSUITS not expressly included in the definition of PAST DEFENSE COSTS provided in this ADDENDUM."[42] Plaintiff argues that this language "preserved [Plaintiff's] rights to pursue 'causes of action' against the Insurers under the Policies for the post-September 2016 Louisiana Parish Lawsuits defense costs."[43] But Plaintiff waived its right to choose the forum for future defense cost disputes when it became bound by the 2007 Settlement Agreement's arbitration clause. Plaintiff cannot "preserve" in 2017 what it forfeited in 2007.

### E.  The Court Will Compel Arbitration

Courts apply a two-step inquiry when ruling on a motion to compel arbitration. Edwards v. Doordash, Inc., 888 F.3d 738, 743 (5th Cir. 2018) (citing Klein v. Nabors Drilling USA L.P., 710 F.3d 234, 236 (5th Cir. 2013)). "First, the court asks whether there is a valid agreement to arbitrate and, second, whether the current dispute falls within the scope of a valid agreement." Id. "Determining whether there is a valid arbitration agreement is a question of state contract law and is for the court." Huckaba v.

---

[42] Id. at 5 ¶ 3.

[43] Plaintiff's Reply, Docket Entry No. 38, p. 21.

Ref-Chem, L.P., 892 F.3d 686, 688 (5th Cir. 2018) (citing Kubala v. Supreme Production Services, Inc., 830 F.3d 199, 202 (5th Cir. 2016)).

Plaintiff does not dispute that it agreed to the terms of the 2007 Settlement Agreement. The Agreement bears the signature of Plaintiff's duly authorized representative.[44] The court therefore concludes that there is a valid agreement to arbitrate. For reasons set forth above, and with due regard to the federal policy favoring arbitration, see Mastrobuono v. Shearson Lehman Hutton, Inc., 115 S. Ct. 1212, 1218 (1995), the court concludes that this dispute is within the scope of the arbitration agreement. Accordingly, the court will grant Defendants' Motion to Compel.

When all parties in an action are bound by an agreement to arbitrate, the court has discretion to dismiss the action. Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992). Because Plaintiff's claims must be submitted to arbitration, "retaining jurisdiction and staying the action will serve no purpose." See id. Accordingly, the court will dismiss the action without prejudice.

### III.  Conclusions and Order

For the reasons explained above, Plaintiff's Motion to Remand (Docket Entry No. 10) is **DENIED**, Defendants' Motion to Dismiss and

---

[44] 2007 Settlement Agreement, Exhibit A to Defendants' Response, Docket Entry No. 23-1, pp. 28-29.

Compel Arbitration (Docket Entry No. 5) is **GRANTED**, and this action will be dismissed without prejudice.

**SIGNED** at Houston, Texas, on this 8th day of September, 2021.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE